IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| OASIS LEGAL FINANCE OPERATING COMPANY, LLC, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 17 C 358 |
| v. | ) ) | Judge Robert W. Gettleman |
| GARY CHODES, NICOLAS MESSÉ, and OASIS DISABILITY, LLC d/b/a OASIS DISABILITY GROUP, | ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| RAISECO HOLDINGS, LLC, | ) ) | |
| Defendant / Counterclaim Plaintiff. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Oasis Legal Finance Operating Company, LLC provides litigation funding. Companies that fund litigation advance money to plaintiffs involved in lawsuits. In exchange, the funding companies receive an interest in any money that those plaintiffs might receive from judgments or settlements.

This case is about plaintiff's trademarks. Plaintiff registered several trademarks with the United States Patent and Trademark Office. Those trademarks include "Oasis" and "Oasis Legal Finance" (together, "Oasis marks"). Plaintiff sued its former Chief Executive Officer—defendant Gary Chodes—claiming that Chodes infringed and helped others infringe plaintiff's Oasis marks.

Plaintiff fired Chodes in 2013. After he was fired, Chodes claimed that he owned the Oasis marks. He purported to transfer those marks to companies under his control. One of those companies was defendant RaiseCo Holdings, LLC ("RaiseCo"). RaiseCo intervened as a defendant and counterclaimed for a declaration that it owns the Oasis marks. This court disagreed and granted partial summary judgment for plaintiff, holding that plaintiff owned the marks. Oasis Legal Finance Operating Co. v. Chodes, No. 17 C 358, Doc. 227 at 4–5 (N.D. Ill. Feb. 8, 2018).

Plaintiff moves for summary judgment as to liability. Summary judgment is proper if no material fact is genuinely disputed and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250–51 (1986). The court takes the facts from the parties' L.R. 56.1 statements and from the affidavits, depositions, and exhibits on file, drawing all justifiable inferences in favor of the non-moving party. Id. at 255.

For the following reasons, the court grants summary judgment for plaintiff on all claims as to liability except for the cyberpiracy claim against defendant Nicolas Messé. The court also grants summary judgment for plaintiff on defendants' affirmative defenses.

## **DISCUSSION**

Plaintiff's eleven-count third amended complaint contains three sets of trademark infringement claims. The first set is brought against defendants Chodes and Nicolas Messé. Chodes purported to transfer the Oasis marks to Messé and suggested that Messé use the Oasis name; Messé built and registered the website oasislegalfinancegroup.biz. On all but one claim, plaintiff is entitled to summary judgment: consumers seeking litigation funding would likely confuse Messé's website—"Oasis Legal Finance Group"—with plaintiff's names, "Oasis" and "Oasis Legal Finance." Chodes assisted Messé's infringement. No reasonable jury could find otherwise. But plaintiff is not entitled to summary judgment on its cyberpiracy claim: plaintiff

2

cites no evidence that Messé registered the Oasis Legal Finance Group website with "a bad faith intent to profit" from the Oasis marks.

The second set of claims is against Chodes and one of his companies—defendant Oasis Disability Group. Chodes and Oasis Disability Group offered disability advocacy services using the names "Oasis Disability Group" and "Oasis Disability." They also used the website oasisdisabilitygroup.com. As to this set, plaintiff is entitled to summary judgment on all claims. Consumers would likely confuse "Oasis Disability Group" with "Oasis." The salient portion of the marks—Oasis—is identical. And there is much evidence that Chodes intended to palm off Oasis Disability Group as Oasis, seeking to trade on the strength of the Oasis marks.

The final set of claims is against another of Chodes's companies—defendant RaiseCo. RaiseCo registered the Oasis name with the United States Patent and Trademark Office. RaiseCo claimed that it was using the Oasis name for "paralegal services." Plaintiff is entitled to summary judgment on its cancelation claim against RaiseCo for two reasons: plaintiff was the senior user of the Oasis marks, and there is no evidence that RaiseCo ever rendered paralegal services.

## 1     Chodes and Messé: marks used for litigation funding

The first set of claims is against Chodes and Messé. Chodes purported to transfer the Oasis marks to Messé; Messé registered the website oasislegalfinancegroup.biz. Plaintiff sued Messé under federal law for trademark infringement, unfair competition, and cyberpiracy, and under state law for unfair or deceptive acts. Plaintiff also sued Chodes for contributory infringement. For the following reasons, plaintiff is entitled to summary judgment as to liability on all these claims except for the cyberpiracy claim against Messé.

The court begins with the material facts. None of them is genuinely disputed. In fall 2016, three years after he was fired, Chodes caused his company—defendant Oasis Disability Group—

to transfer the Oasis marks to Signal Funding, LLC ("Signal"). Chodes was Signal's Chief Executive Officer. A few months later, Chodes caused Signal to license the marks to Messé, a Signal contractor. Messé was hired to build and did in fact build a website for a litigation funding company. That company's name was "Oasis Legal Finance Group." Plaintiff owns trademarks in "Oasis" and "Oasis Legal Finance."

Messé testified that the name "Oasis Legal Finance Group" "came from Gary [Chodes]." According to Messé, Chodes believed that he owned the Oasis name. Chodes told Messé that "there were people that were potentially disrupting him on that." Chodes wanted "to make sure that they understood that he owned it." Using the name "Oasis Legal Finance Group" would "help him solidify that."

Messé issued a press release stating that Oasis Legal Finance Group would offer "pre-settlement financing" by "providing clients and their attorneys with the financial support they need to pay their bills and the time to fight for a fair personal injury settlement." On social media, Oasis Legal Finance Group called itself "a pre-settlement lawsuit funding company that can provide you quick access to funds while you wait for your personal injury case to settle."

Chodes forwarded Messé's press release to his industry contacts. Chodes wrote, "I have a very good relationship with Nick Messé, Managing Director of Oasis Legal Finance Group." Messé, Chodes wrote, "could be a terrific resource for you." But Chodes cautioned that he was "now running Signal Funding" and "no longer ha[d] any affiliation with Oasis Financial." He also included a footnote: "Oasis Financial and Oasis Legal Finance Group operate independently and are not affiliated."

Among Chodes's industry contacts was Andrew Youngman. Youngman was the President and CEO of Citizens Disability LLC—a company that helped people secure Social Security

disability benefits. Chodes forwarded Messé's press release to Youngman. Youngman replied to Chodes: "I'm a bit confused at your intro to Nicolas. Is he leaving Oasis or do you believe there is an opportunity for Citizens to work with Oasis?" Youngman apparently believed that Messé was an employee of plaintiff Oasis Legal Finance. Youngman did not understand why Chodes was steering business to a company with which Chodes no longer had any affiliation.

Plaintiff's former in-house counsel was also confused. He sent an email to plaintiff's then-CEO. The subject line was "Oasis Legal Finance Group." In the body of the email, plaintiff's former in-house counsel pasted Oasis Legal Finance Group's web address—http://oasislegalfinancegroup.biz/—and asked plaintiff's CEO, "Is this you?"

Plaintiff moves for summary judgment against Messé on four claims: (1) trademark infringement, 15 U.S.C. § 1114(1); (2) unfair competition, 15 U.S.C. § 1125(A)(1)(a); (3) unfair or deceptive acts, 815 ILCS 510/1 et seq.; and (4) cyberpiracy, 15 U.S.C. § 1125(d)(1)(A). Plaintiff also moves for summary judgment against Chodes for contributory infringement, claiming that Chodes encouraged or assisted Messé's infringement. See Flava Works, Inc. v. Gunter, 689 F.3d 754, 757 (7th Cir. 2012). Plaintiff is entitled to summary judgment as to liability on all claims other than cyberpiracy.

### 1.1  Messé: infringement; unfair competition; deceptive acts

The key question for plaintiff's federal trademark claims against Messé's is whether consumers seeking litigation funding would likely be confused. See Barbecue Marx, Inc. v. 551 Ogden, Inc., 235 F.3d 1041, 1043 (7th Cir. 2000) (describing a seven-factor test for likelihood of confusion). That same question is central to plaintiff's state law claim of unfair or deceptive acts. McGraw-Edison Co. v. Walt Disney Productions, 787 F.2d 1163, 1173–74 (7th Cir. 1986).

5

The court need not march through all seven factors. Consumers seeking litigation funding would likely confuse Messé's website—"Oasis Legal Finance Group"—with plaintiff's name, "Oasis Legal Finance." No reasonable jury could find otherwise. To start, the names are nearly identical. That alone is compelling evidence favoring plaintiff on two factors: (1) similarity between the marks in appearance and suggestion; and (2) intent to palm off Oasis Legal Finance Group as Oasis Legal Finance. CAE, Inc. v. Clean Air Engineering, Inc., 267 F.3d 660, 678 (7th Cir. 2001) (similarity of the marks); Barbecue Marx, 235 F.3d at 1046 (7th Cir. 2000) (intent to palm off). Those two factors (along with actual confusion) are "particularly important." Packman v. Chicago Tribune Co., 267 F.3d 628, 643 (7th Cir. 2001). Combined with the strength of plaintiff's marks—all agree that Oasis Legal Finance "arguably is the most well-known brand nationwide for legal funding"—there is no doubt that consumers would likely be confused. See CAE, 267 F.3d at 684–85.

The court need not decide whether plaintiff's evidence of actual confusion is relevant. Plaintiff offers two examples of such confusion: the email from the President and CEO of Citizens Disability LLC to Chodes and the email from plaintiff's former in-house counsel to plaintiff's then-CEO. When available, evidence of actual confusion is "entitled to substantial weight." Id. at 685. But plaintiff's emails come from industry insiders. The Seventh Circuit has warned that "evidence of actual confusion must refer to the confusion of reasonable and prudent consumers, and not confusion among sophisticated members" of the industry. Platinum Home Mortgage Corp. v. Platinum Financial Group, Inc., 149 F.3d 722, 729 (7th Cir. 1998). Are courts categorically barred from considering evidence of industry confusion? E.g., Simon Property Group, L.P. v. mySimon, Inc., No. IP 99-1195-C H/G, 2001 WL 66408, at *15 n.9 (S.D. Ind. Jan. 24, 2001) (Hamilton, J.) (refusing to consider testimony from the plaintiff's "investment bankers,

lawyers, contractors, and advertising agents"). Or may courts consider such evidence to the extent that it bears on consumer confusion? See Rearden LLC v. Rearden Commerce, Inc., 683 F.3d 1190, 1216 (9th Cir. 2012) (holding that as "a matter of basic common sense," industry confusion can "serve as an adequate proxy or substitute for evidence of actual consumer confusion").

If evidence of industry confusion can serve as a proxy for consumer confusion, plaintiff's evidence does just that. Citizens Disability's CEO and plaintiff's former in-house counsel both appear to have confused Oasis Legal Finance Group with Oasis Legal Finance—and consumers with less sophistication could hardly do better.

That reasoning might be permissible despite Platinum Home Mortgage's admonition that "evidence of actual confusion must refer to the confusion of reasonable and prudent consumers, and not confusion among sophisticated members" of the industry. 149 F.3d at 729. On one reading, that sentence categorically bars evidence of industry confusion. But another reading is possible. The prepositional verb "refer to" is key—in context, it could mean "bear on," "be relevant to," or "be probative of." If that reading is right, evidence of industry confusion might be relevant. But the court need not reach that conclusion. Even without plaintiff's evidence of actual confusion, no reasonable jury could find for Messé on plaintiff's claims of trademark infringement, unfair competition, or deceptive acts.

### 1.2   Chodes: contributory infringement

Nor could a reasonable jury find for Chodes. Chodes told Messé to use the name "Oasis Legal Finance Group." He did so to "solidify" his ownership of the Oasis marks. He encouraged and assisted Messé's infringement and is thus liable for contributory infringement. See Flava Works, 689 F.3d at 757.

### 1.3   Messé: cyberpiracy

Plaintiff is not entitled to summary judgment on its cyberpiracy claim against Messé. To be liable, Messé must have registered the Oasis Legal Finance Group website with "a bad faith intent to profit" from the Oasis marks. 15 U.S.C. § 1125(d)(1)(A)(i). Plaintiff cites no such evidence.

Plaintiff instead cites evidence of Chodes's bad faith. Years before Chodes told Messé to use the Oasis name, Chodes's lawyers told him that plaintiff owned the marks—at least for litigation funding, if not for other businesses. But plaintiff cites no evidence that Messé knew what Chodes knew.

Messé appears to have been cavalier about using plaintiff's marks. In his deposition, for example, Messé was asked by plaintiff's lawyer whether he had been "concerned" about a trademark dispute. Messé replied: "No. I thought you should be concerned. My research showed you guys don't defend your trademark." A reasonable jury might infer bad faith from that testimony—Messé was unconcerned because he thought that although plaintiff owned a valid trademark, plaintiff would not sue to enforce it.

Still, Messé's testimony might also be consistent with him having believed that plaintiff's marks were abandoned. And in any event, plaintiff did not cite this testimony. Nor did plaintiff cite any other evidence that Messé registered the Oasis Legal Finance Group website with a bad faith intent to profit from the Oasis marks.

### 1.4   Chodes and Messé's arguments

Chodes and Messé respond with three procedural arguments, none of them persuasive. First, Chodes wrongly argues (citing no authority) that plaintiff can sue only Signal—the licensor who transferred the marks to Messé. Only by piercing the corporate veil, Chodes argues, can

plaintiff sue Chodes personally. Not so. Chodes is liable because he participated in infringing Oasis's marks. He admits in his declaration that he "knew of and approved the license to Nic[olas] [Messé]" and that he "was authorized" to do so "as the CEO of Signal." See Dangler v. Imperial Machine Co., 11 F.2d 945, 947 (7th Cir. 1926) (holding that corporate officers are liable when they "personally participate[ ]" in the infringement); Weller Manufacturing Co. v. Wen Products, Inc., 231 F.2d 795, 801 (7th Cir. 1956) (holding that the "chief officer and manager of the defendant corporation" was "personally liable for willful infringement" because "he was at all times in control of the administrative and managerial policy of the corporation"); Itofca, Inc. v. Hellhake, 8 F.3d 1202, 1204 (7th Cir. 1993) ("In Illinois, corporate officers are liable for torts if they participated in the conduct giving rise to that liability.") (quotation marks, citation, and emphasis omitted).

Second, Chodes and Messé argue that plaintiff has waived and forfeited monetary damages, pointing to plaintiff's statements to Magistrate Judge Schenkier. Those issues are not before the court. Plaintiff moves for summary judgment as to liability only, which the Federal Rules of Civil Procedure allow. Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."). Chodes and Messé's arguments are premature.

Third, Chodes and Messé imply that plaintiff's claims are moot. Not so. Plaintiff, Chodes, and Messé filed—and this court entered—an agreed stipulation that Chodes and Messé would stop using the Oasis name. See Doc. 102 at 4. Chodes and Messé assert that they have complied with the stipulation. If so, that might affect damages. But their compliance has nothing to do with plaintiff's summary judgment motion. "A private party's discontinuation of unlawful conduct does not make the dispute moot," and "[a]n injunction remains appropriate to ensure that the

9

misconduct does not recur as soon as the case ends." BMG Music v. Gonzalez, 430 F.3d 888, 893 (7th Cir. 2005).

For these reasons, the court grants summary judgment for plaintiff as to liability on Counts I through IV of the third amended complaint. The court denies summary judgment as to Count V.

**2      Chodes, Oasis Disability Group, and RaiseCo: marks used for disability advocacy**

Plaintiff's second set is claims is against Chodes, Oasis Disability Group, and RaiseCo. Plaintiff sued Chodes and Oasis Disability Group for trademark infringement, unfair competition, and cyberpiracy under federal law, and for unfair or deceptive acts under state law. Plaintiff also brought contributory infringement claims against Chodes and RaiseCo. For the following reasons, plaintiff is entitled to summary judgment as to liability on all these claims.

None of the material facts is genuinely disputed. When Chodes was still plaintiff's CEO, plaintiff began providing Social Security disability advocacy services. Companies providing such services help people apply for Social Security disability benefits. Plaintiff and its executives— including Chodes—believed that many people seeking litigation funding might also be eligible for Social Security benefits. An internal PowerPoint presentation dated May 2012 listed bullet points explaining "Why Oasis should enter the social security advocacy market":

- Leverage existing infrastructure, staff, core competencies
  - Marketing
  - Processing
  - Call Center
- Utilize Oasis' DRTV experience to procure low cost leads
- Large, growing market with target market similar to Oasis' core business
- Highly scalable, especially with current Oasis processes
- Few national market participants, even fewer with sophisticated DRTV capabilities

- Take advantage of non-correlated seasonal demands

Plaintiff's experiment was short-lived. It began in spring 2012 and ended that December. Plaintiff did not provide Social Security disability advocacy services using the name "Oasis."

After a few months, plaintiff fired Chodes. Two-and-a-half years passed and Chodes came back. He issued a press release announcing that Oasis Legal Finance Group would "once again provide Social Security Disability Services":

### Oasis Legal Finance Group To Re-Enter Disability Services Market

*Oasis Legal Finance Group to resume providing support to those in the disability application process*

January 22, 2016 -- OasisSM Legal Finance Group announced today that it will once again provide Social Security Disability Services to help those trying to navigate the complicated Social Security Disability Benefits application process.

* * *

"By returning to the disability services market, Oasis can help millions of individuals in need, not just those suffering physical injuries from accidents, but also those suffering with debilitating chronic conditions, mental illness and drug addiction," said Chodes. . . .

* * *

About Oasis Legal Finance Group

Founded in 2002, Oasis Legal Finance Group is a pioneer in the legal funding industry, providing financial resources to consumers injured in auto accidents and at the workplace. Oasis began providing financial services to the injured on a national basis in 2003 and developed a network of thousands of attorneys. . . . Oasis Legal Finance Group operates independently of Oasis Financial.

Chodes registered the name "Oasis" as a trademark with the United States Patent and Trademark Office for "paralegal services." Later in 2016, Chodes and others formed Signal Funding LLC to compete with plaintiff in the legal financing market, with Chodes as CEO. Chodes—through RaiseCo, a company wholly owned by Chodes—gave Signal a license to use

the Oasis paralegal services mark. Chodes then licensed that mark (through either Signal or RaiseCo) to defendant Oasis Disability Group—another company wholly owned by Chodes.

Chodes decided to use the name "Oasis Disability Group" to offer Social Security disability advocacy services. He directed an Oasis Disability Group employee to buy multiple domain names containing the word "Oasis." Chodes successfully acquired the domain name oasisdisabilitygroup.com. He activated the website in October 2016. Oasis Disability Group started rendering services the next month.

Plaintiff moves for summary judgment against Chodes and Oasis Disability Group on four claims: (1) trademark infringement, 15 U.S.C. § 1114(1); (2) unfair competition, 15 U.S.C. § 1125(A)(1)(a); (3) unfair or deceptive acts, 815 ILCS 510/1 et seq.; and (4) cyberpiracy, 15 U.S.C. § 1125(d)(1)(A). Plaintiff also moves for summary judgment against Chodes and RaiseCo for contributory infringement, claiming that Chodes and RaiseCo encouraged or assisted Oasis Disability Group's infringement. See Flava Works, 689 F.3d at 757. Plaintiff is entitled to summary judgment as to liability on all claims.

### 2.1   Chodes and Oasis Disability: infringement; unfair competition; deceptive acts

The key question for plaintiff's federal trademark claims against Chodes and Oasis Disability Group is whether consumers seeking litigation funding would likely be confused. Barbecue Marx, 235 F.3d at 1043. That same question is central to plaintiff's state law claim of unfair or deceptive acts. McGraw-Edison, 787 F.2d at 1173–74.

Whether consumers would likely be confused depends on seven factors: "(1) the similarity between the marks; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care consumers are likely to use; (5) the strength of plaintiff's

12

mark; (6) actual consumer confusion; and (7) the defendant's intent to 'palm off' its product as that of another." Uncommon, LLC v. Spigen, Inc., 926 F.3d 409, 425 (7th Cir. 2019).

The three "most important factors in a likelihood of confusion case" are "the similarity of the marks, the intent of the defendant, and evidence of actual confusion." Ty, Inc. v. Jones Group, Inc., 237 F.3d 891, 898 (7th Cir. 2001) (quotation marks omitted). Of those three factors, the first two heavily favor finding a likelihood of confusion. Plaintiff is thus entitled to summary judgment on its claims of trademark infringement, unfair competition, and deceptive acts.

**Similarity of "Oasis Disability Group" and "Oasis."** "Oasis Disability Group" is plainly similar to plaintiff's mark, "Oasis." What makes these marks distinctive is obvious—the name Oasis. There is no genuine dispute that plaintiff markets itself using the name "Oasis" alone. Nor is there any dispute that consumers know and refer to plaintiff as "Oasis" alone. As the most "salient portion of the mark," the name "Oasis" "deserv[es] greater weight than the surrounding elements." Ty, 237 F.3d at 899. This factor heavily favors plaintiff.

Chodes and Oasis Disability Group's response is specious. They rely on alleged distinctions in style. They observe, for example, that plaintiff "has a sleek, modern website" that "uses short amounts of text with icons – to enable easier quick reading and scanning." In contrast, Oasis Disability Group's website "is full of dense legal information" and uses "black, white, and red – a more 'retro,' stodgy approach" to "convey seriousness of purpose."

That Chodes and Oasis Disability Group cite no record evidence of these alleged stylistic distinctions is reason enough to dismiss their response. E.g., Richards v. Combined Insurance Company of America, 55 F.3d 247, 251 (7th Cir. 1995) ("It is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.").

And the alleged distinctions are in any event immaterial— the "salient portion of the mark" is the name "Oasis." <u>Ty</u>, 237 F.3d at 899.

**Intent to palm off "Oasis Disability Group" as "Oasis."** Why did Chodes and Oasis Disability Group choose the name "Oasis Disability Group"? No reasonable jury could doubt that they intended to trade on the strength of Oasis's name. That conclusion is corroborated by Chodes's press release. In that press release, Chodes stated that "OasisSM Legal Finance Group" would "<u>once again</u> provide Social Security Disability Services"—that it would "<u>return</u>[ ] to the disability services market" (emphasis added).

How might consumers read the part of Chodes's press release referring to past services? Consumers would not attribute those services to Chodes or to any of his companies. That would require evidence that Chodes or his companies provided disability services in the past; there is no such evidence. Nor would consumers attribute the past services to plaintiff's brief 2012 experiment in providing disability services—plaintiff did not provide those services under the name "Oasis."

What remains is the name "OasisSM Legal Finance Group." Reasonable consumers could draw but one conclusion: an "Oasis" company provided disability services in the past and would resume providing disability services in the future. That Oasis company could not have been Oasis Disability Group, which Chodes had yet to form. It could only have been plaintiff— the owner of the "Oasis" and "Oasis Legal Finance" marks, marks that are indisputably strong.

As plaintiff's former CEO and as a sophisticated veteran in the legal financing industry, Chodes surely knew that consumers would associate his name with plaintiff's marks. Even if he believed that plaintiff had no plans to return to the disability services industry, why did he choose

to use the Oasis name in his press release? And why did he do so again when he formed Oasis Disability Group?

Plaintiff's success makes clear that "Oasis" is a fine word for a business to use as the salient portion of its name. Yet there surely are many others. Of them all, Chodes chose the word used by his former company—a company that had experimented with disability services, a company that owned strong marks with which he was intimately familiar. Chodes offers no reason to doubt that he intended to trade on the strength of the Oasis name. And no reasonable jury could find otherwise.

**Actual consumer confusion.** This factor is neutral or favors Chodes and Oasis Disability Group. The court declines to consider plaintiff's evidence of industry confusion for the reasons discussed earlier in this opinion. See 1.1 (concluding that the Seventh Circuit has yet to decide whether courts may consider evidence of industry confusion as a proxy for consumer confusion). After Chodes issued his press release, an industry member emailed Chodes, "Are [you] back with Oasis? I am confused by the press release." Platinum Home Mortgage, 149 F.3d at 729, arguably bars this court from considering that evidence. But the court need not do so—all the other factors favor plaintiff.

**Similarity of litigation funding and disability services advocacy.** This factor favors plaintiff. Before this suit, Chodes himself claimed that the target consumers for litigation funding and disability services advocacy substantially overlap. A pedestrian hit by a car, for example, might sue the driver and at the same time apply for disability benefits. Chodes now denies these similarities in a declaration. The Seventh Circuit's sham affidavit rule does not bar Chodes's statements in his current declaration; his previous statements were not under oath. See, e.g., Buckner v. Sam's Club, Inc., 75 F.3d 290, 292 (7th Cir. 1996). The court disregards Chodes's

15

statements for a separate reason: they fail to show his personal knowledge of the alleged differences between litigation funding and disability services advocacy. See Fed. R. Evid. 602.

**Area and manner of concurrent use.** This factor favors plaintiff. There is no dispute that the parties rely on the internet to reach customers and their lawyers. Chodes and Oasis Disability Group assert that they never advertise on TV while plaintiff, on the other hand, relies mostly on TV advertisements. But once again, Chodes and Oasis Disability Group cite no record evidence. They cannot rely on this court to "scour the record in search of a genuine issue of triable fact." Richards, 55 F.3d at 251.

**Care used by consumers of litigation funding and disability advocacy services.** This factor favors plaintiff. Chodes and Oasis Disability Group do not dispute that plaintiff's typical consumer is someone injured in an accident, pursuing litigation, and having trouble making ends meet. They do not dispute that such consumers do little research on litigation funding companies. And they do not dispute that those consumers usually choose plaintiff because they saw an advertisement from plaintiff or because their lawyers recommended plaintiff. There is no reason to think that a consumer seeking advocacy services for disability benefits would be more careful. Chodes and Oasis Disability Group respond only that plaintiff "tantalizes consumers with promises of quick cash" while "the SSA process moves at a glacial pace"—unsurprisingly citing no record evidence once again.

**Strength of the Oasis Mark.** This factor favors plaintiff. Chodes and Oasis Disability do not dispute that Oasis Legal Finance "arguably is the most well-known brand nationwide for legal funding."

To sum up: six of the seven factors affecting likelihood of confusion favor plaintiff. Those factors include similarity of the marks and intent to palm off—factors considered particularly

16

important in likelihood of confusion cases. No reasonable jury could find for Chodes and Oasis Disability Group on plaintiff's claims of trademark infringement, unfair competition, or deceptive acts.

### 2.2   Chodes and RaiseCo: contributory infringement

Plaintiff is entitled to summary judgment on the contributory infringement claims against Chodes and RaiseCo. Chodes "acknowledges that he controls RaiseCo and Oasis Disability, LLC." He also acknowledges that he decided to start providing disability advocacy services under the Oasis name. There thus is no dispute: Chodes encouraged or assisted Oasis Disability Group's infringement. See Flava Works, 689 F.3d at 757.

### 2.3   Chodes and Oasis Disability: cyberpiracy

Plaintiff is entitled to summary judgment on the cyberpiracy claims against Chodes and Oasis Disability Group. Chodes and Oasis Disability Group offer no defense. As discussed, their use of Oasis Disability Group was likely to confuse consumers. And unlike Messé, there is no question that they registered the Oasis Legal Finance Group website with "a bad faith intent to profit" from the Oasis marks. 15 U.S.C. § 1125(d)(1)(A)(i).

For these reasons, the court grants summary judgment for plaintiff as to liability on Counts VI through X of the third amended complaint.

### 3   RaiseCo: statements to the Patent Office about using marks for paralegal services

Plaintiff's third and final set is claims is against RaiseCo—another company wholly owned by Chodes. Through another one of his companies (not RaiseCo), Chodes applied to the United States Trademark and Patent Office seeking to register the mark "Oasis" for "paralegal services." Chodes transferred the application to RaiseCo. Several months later, the Patent Office registered the mark (No. 4,897,569).

Plaintiff sued RaiseCo under 15 U.S.C. § 1119, seeking cancelation of RaiseCo's Oasis mark. Plaintiff argues for cancelation based on three reasons. First, plaintiff owned the senior rights to the Oasis marks. Second, RaiseCo never used the '569 registration for paralegal services. Third, Chodes fraudulently obtained the '569 registration by: (1) failing to disclose that plaintiff already held rights to several Oasis marks; (2) falsely submitting an alleged specimen of use that was nothing but a mockup; and (3) lying about using paralegal services.

Plaintiff is entitled to summary judgment based on the first two reasons. The court declines to decide whether Chodes fraudulently obtained the '569 registration.

### 3.1 Senior rights to the Oasis marks

There is no dispute that plaintiff owned the senior rights to the Oasis marks—RaiseCo does not even respond to this argument. "It is a bedrock principle of trademark law that trademark ownership is not acquired by federal or state registration, but rather from prior appropriation and actual use in the market." S.C. Johnson & Son, Inc. v. Nutraceutical Corp., 835 F.3d 660, 665 (7th Cir. 2016) (alterations and quotation marks omitted). "A trademark application is always subject to previously established common law trademark rights of another party"—and here, the party with established trademark rights under common law was plaintiff. Id. (alterations and quotation marks omitted).

### 3.2 Use of the '569 registration for paralegal services

Plaintiff is also entitled to summary judgment because there is no evidence that RaiseCo ever used the '569 registration for paralegal services. A trademark applicant must verify that "the mark is in use in commerce." 15 U.S.C. § 1051(a)(3)(C). For service marks, that "requirement is met when the mark is used or displayed in the sale or advertising of services and the services are rendered in commerce." American Eagle Outfitters, Inc. v. American Eagle Furniture, Inc.,

No. 11 C 02242, 2013 WL 6839815, at *12 (N.D. Ill. Dec. 27, 2013) (emphasis added; quotation marks omitted). "If a mark fails to meet this requirement, it is void." Id., citing Aycock Engineering, Inc. v. Airflite, Inc., 560 F.3d 1350, 1357 (Fed. Cir. 2009).

Although RaiseCo might have rendered disability advocacy services, it does not dispute that those services and paralegal services are different. RaiseCo points to statements in Chodes's declaration expressing his belief that paralegals are capable of disability advocacy. Even so, that is irrelevant. Neither Chodes's statements nor anything else cited by RaiseCo suggest that RaiseCo ever provided paralegal services of any kind. RaiseCo's '569 registration is void.

For these reasons, the court grants summary judgment for plaintiff on Count XI of the third amended complaint.

## 4     Defendants' affirmative defenses: third-party use; abandonment; acquiescence

Finally, plaintiff is entitled to summary judgment on the twenty affirmative defenses pled in the answer filed by Messé, Chodes, Oasis Disability Group, and RaiseCo (together, "defendants"). To defeat summary judgment on an affirmative defense, defendants must offer evidence that would allow a reasonable jury to find for them on that defense. United Central Bank v. Wells Street Apartments, LLC, 957 F. Supp. 2d 978, 988 (E.D. Wis. 2013). If defendants fail to do so—and if "plaintiff otherwise shows that it is entitled to judgment as a matter of law"—"then the affirmative defense is extinguished." Id. Of their twenty affirmative defenses, defendants mention only three: third-party use, abandonment, and acquiescence. None has merit.

### 4.1   Third-party use

Plaintiff is entitled to summary judgment on defendants' third-party use defense because defendants have waived it. Defendants spend only two sentences discussing third-party use. First, citing no record evidence, defendants assert that "there are a number of registered 'Oasis'

marks in the Class 36 financial sector." They then argue that "[u]se of similar marks by third-party companies in the relevant industry weakens the mark." Defendants' failure to cite record evidence—a recurring problem in their briefs—waives any argument based on third-party use. Richards, 55 F.3d at 251.

The defense is also waived because defendants fail to explain its significance. Why would it matter if plaintiff's marks had in fact been weakened by third-party use? Maybe evidence of such use could strengthen an abandonment claim, see Eva's Bridal Ltd. v. Halanick Enterprises, Inc., 639 F.3d 788, 789–90 (7th Cir. 2011), or an acquiescence claim, see Hyson USA, Inc. v. Hyson 2U, Ltd., 821 F.3d 935, 940 (7th Cir. 2016). But defendants pled third-party use as a standalone affirmative defense. By failing to develop that defense in their briefs, they have doubly waived it. See United States v. Cisneros, 846 F.3d 972, 978 (7th Cir. 2017).

### 4.2 Abandonment

Plaintiff is also entitled to summary judgment on defendants' abandonment defense. A mark is abandoned "[w]hen its use has been discontinued with intent not to resume such use." 15 U.S.C. § 1127. There is no evidence that plaintiff abandoned the Oasis marks. Defendants spill much ink arguing that plaintiff abandoned its common law marks in "Oasis Disability Advocates" and "Oasis Disability." Those common law marks are beside the point. Plaintiff had registered trademarks under federal law for "Oasis" and "Oasis Legal Finance" when defendants began using the Oasis name—and those marks were never abandoned.

### 4.3 Acquiescence

Finally, plaintiff is entitled to summary judgment on defendants' acquiescence defense. Acquiescence is "active consent." Hyson USA, 821 F.3d at 940, quoting What-A-Burger Of Virginia, Inc. v. Whataburger, Inc. Of Corpus Christi, Texas, 357 F.3d 441, 452 (4th Cir. 2004).

The trademark owner must have "actively represented that it would not assert a right or a claim." Hyson USA, 821 F.3d at 941, quoting SunAmerica Corp. v. Sun Life Assurance Company of Canada, 77 F.3d 1325, 1334 (11th Cir. 1996).

There is no evidence that plaintiff actively represented that it would forgo asserting its rights to the Oasis marks. Defendants stress that plaintiff knew about Chodes securing an "Oasis" mark for paralegal services and yet, less than two weeks later, applied for its own "Oasis" mark—not for paralegal services, but for legal funding. That was a mistake, defendants say—disability advocacy services falls under paralegal services. Defendants argue that plaintiff should have sought registration in the paralegal services class if plaintiff wanted to protect its marks. Even so, none of that amounts to plaintiff "actively representing" that it would not assert its rights against Chodes. Hyson USA, 821 F.3d at 941.

\* \* \*

One last point. Plaintiff rightly objects to defendants' utter failure to comply with: (1) Local Rule 56.1, which governs summary judgment motions; (2) this court's briefing schedule; and (3) Local Rule 7.1, which governs page limits for briefs. The following excerpts from plaintiff's reply (minor alterations not noted) thoroughly and accurately recount the facts:

> Defendants initially received two months to file opposition papers to the SJ Motion. On the eve of their first due date, Defendants requested and received an extension. Seven days after that deadline passed, Defendants requested and received a second extension, with the final due date of February 6, 2019 (based on a promise to the Court to meet this deadline). But that deadline, too, came and went. In callous disregard of the Court's scheduling Orders: (i) Defendants Chodes, Messé and Disability did not file their 38-page First Brief until February 7, 2019 at 4:24 a.m.; (ii) Defendants did not file their Local Rule 56.1 Joint Response and Additional Facts ("56.1 Response") until February 8, 2019 at 8:29 a.m.; (iii) inexplicably, RaiseCo filed a separate, Second Brief addressing cancellation on February 8, 2019 at 3:38 p.m.; and (iv) Defendants did not file the Declaration of James Madigan,

which is referenced throughout the Briefs and apparently attaches the bulk of the exhibits that allegedly support their 56.1 Response.

Additionally, Defendants did not seek permission to file a brief in excess of the 15-page limit set by the Local Rules—let alone two, separate briefs. N.D. Ill. L.R. 7.1. Yet, without leave of the Court, Defendants filed their First Brief at 38 pages in length and filed their Second Brief at 15 pages in length, thus granting themselves 38 extra pages.

The court agrees with plaintiff that striking the entirety of defendants' summary judgment pleadings would be an appropriate penalty. See Bordelon v. Chicago School Reform Bd. of Trustees, 233 F.3d 524, 527 (7th Cir. 2000) ("Given their importance, we have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment."). The court declines to do so only because plaintiff would not be prejudiced. None of defendants' pleadings persuaded this court to deny summary judgment on any claim. The cyberpiracy claim against Messé survives not because defendants marshaled opposing evidence—they barely mentioned that claim—but because plaintiff has yet to cite evidence of Messé's bad faith.

## CONCLUSION

For these reasons, plaintiff Oasis Legal Finance Operating Company, LLC's summary judgment motion [Doc. 293] is granted in part. The court: (1) grants summary judgment as to liability on Counts I through IV of the third amended complaint; (2) denies summary judgment on Count V; (3) grants summary judgment as to liability on Counts VI through X; and (4) grants summary judgment on Count XI. Defendant RaiseCo Holdings, LLC's Oasis mark (Registration No. 4,897,569) is canceled. Plaintiff's motion [Doc. 308] to strike defendants' unclean hands affirmative defense is denied as moot.

The court directs plaintiff to file, by May 13, 2020, a summary of its claimed damages for the counts on which the court has granted summary judgment, including the evidence that plaintiff anticipates would support such damages. The court will set a status hearing after the COVID-19 emergency has abated.

**ENTER:** April 15, 2020

**Robert W. Gettleman**
**United States District Judge**